**UNITED STATES v. HACK.**

No. 10805.

United States Court of Appeals
Seventh Circuit.

June 24, 1953.

Rehearing Denied July 16, 1953.

Major, Chief Judge, dissented in part.

George R. Jeffrey and Ferdinand Sam-
per, Indianapolis, Ind., for appellant.

Marshall E. Hanley, U. S. Atty., and E. Andrew Steffen, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

Defendant was charged in a two count indictment with violating sections 472 and 371 of Title 18 U.S.C. The first count charged Ada Miller, a co-defendant, with passing a counterfeit $20 Federal Reserve Note on the Federal Reserve Bank of New York with intent to defraud, in violation of section 472, and that Everett Edward Hack and David D. Bocock procured the commission of said offense by Ada Miller.

The second count charged that on or about the 13th of December, 1951, and continuously thereafter until December 20, 1951, Everett Edward Hack, Ada Miller and David Bocock conspired to commit an offense against the United States in violation of section 371 by passing and causing to be passed, with intent to defraud, counterfeited obligations of the United States. The specific acts involved in said conspiracy are set out in detail in said count.

Defendants were represented by counsel of their own choice and pleaded not guilty. They were tried by a jury and were found guilty as charged in both counts. Defendant, Hack, was sentenced by the court to five years on count 1 and to three years on count 2, the latter sentence to begin to run after the completion of, or the legal release from, the sentence imposed upon count 1 of the indictment. This appeal is prosecuted on behalf of Everett Edward Hack.

We deem it advisable to state the facts in some detail.

Defendant, Everett Edward Hack, Monroe Ellis Hack, and defendant Ada Miller are brothers and sister. Defendant Ada Miller, and Monroe Ellis Hack maintained individual residences in Louisville, Kentucky. Defendant Everett Edward Hack maintained his residence in Indianapolis, Indiana. He was in the retail used car business, and operated his business from a used car lot at 3727 Massachusetts Avenue, Indianapolis, Indiana. He maintained his residence at this location, living in a house trailer on the used car lot.

Monroe Ellis Hack's wife, Virginia Hack, resembles defendant Ada Miller. Both of these individuals have practically the same height and build, and on different occasions they have been identified as the same person.

On or about the 9th day of December, 1951, Everett Edward Hack, his wife, and Ada Miller, and David Bocock visited Monroe Ellis Hack and his wife, Virginia, at their residence in Louisville, Kentucky, for approximately fifteen minutes. This was the first time Monroe Ellis Hack had seen his brother Everett Edward Hack in about six years. On their return trip to Indianapolis, which was immediately thereafter, Ada Miller accompanied Everett Edward Hack, his wife, and David Bocock. By arrangement of the parties, Ada Miller was to be employed by her brother Everett Edward Hack to drive automobiles for him. This was the only time Everett Edward Hack had occasion to be in Louisville, Kentucky.

Thereafter, on or about the 11th day of December, 1951, Ada Miller, at the instance of Everett Edward Hack, called Monroe Ellis Hack in Louisville from Indianapolis, and invited him to come to Indianapolis. On the following day at approximately seven o'clock P. M., Monroe Ellis Hack, his wife Virginia, and his son Lloyd arrived at Everett Edward Hack's used car lot. Upon their arrival Ada Miller came out of the used car lot office where she had been with Everett Edward Hack, and invited Monroe Ellis Hack's wife, Virginia, and his son Lloyd into the house trailer which was next door to the car lot office. Everett Edward Hack invited Monroe Ellis Hack into the car lot office and they commenced an evening of discussion and the drinking of alcoholic beverages. On or about the night of December 12, 1951, Everett Edward Hack, talked with Monroe Ellis Hack concerning the passing of counterfeit money in Indianapolis. Defendant advised Monroe Ellis Hack that he was the "head man" and that Monroe Ellis Hack would "take orders from him." This association terminated at approximately three o'clock the

following morning, when Monroe Ellis Hack, his wife Virginia, and his son Lloyd left the car lot and proceeded to a downtown hotel. Upon their departure, Monroe Ellis Hack informed Everett Edward Hack that he would return to the used car lot later on in the day. When Monroe Ellis Hack and his family arrived at the downtown hotel he immediately called the Indianapolis Police Department, and they sent two plain clothes policemen to the hotel to talk with him. The policemen then called the United States Secret Service Office, and a secret service agent came to the hotel and discussed the alleged counterfeit money deal, and the alleged counterfeit money which Everett Edward Hack is alleged to have shown Monroe Ellis Hack at that time. Neither Monroe Ellis Hack nor any member of his family returned to the used car lot, but returned to Louisville, after they left the downtown hotel in Indianapolis.

On December 17, 1951, Monroe Ellis Hack reported to the Louisville secret service office. Later in the morning and after the interview, Monroe Ellis Hack went to Ada Miller's home and had lunch with Ada Miller, her son, and his (Monroe Ellis Hack's) wife. Monroe Ellis Hack left Ada Miller's home at approximately noon. Later during that day, Monroe Ellis Hack again visited the secret service office at Louisville, and promised the agents that he would get samples of counterfeit money from his brother, Everett Edward Hack. Monroe Ellis Hack left the secret service office at approximately five or six o'clock P. M.

At approximately six-thirty P. M., Monday, December 17, 1951, Monroe Ellis Hack made arrangements with secret service agent Harry W. Geiglein to meet at a whiskey store on Bardstown Road, Louisville. Through some misunderstanding with respect to locations they did not meet as planned. Later in the evening secret service agent Harry W. Geiglein and Monroe Ellis Hack did meet. At this meeting Monroe Ellis Hack showed the secret service agent seven counterfeit twenty dollar notes, and told him that he had received them from David Bocock, and Ada Miller.

Secret service agent Geiglein did not take the counterfeit notes from Monroe Ellis Hack, and no arrest was then made.

At approximately seven-thirty o'clock P. M., Monday, December 17, 1951, Ada Miller and David Bocock were at a restaurant and tavern called "Jean's Bar," and they remained there until closing time which was approximately one o'clock the following morning. Monroe Ellis Hack returned home at approximately four o'clock A. M., December 18, 1951.

Late in the morning of December 18, 1951, Monroe Ellis Hack was arrested by secret service agents upon the charge of passing counterfeit notes the night before, but was later released.

On or about the 20th day of December, 1951, Lloyd Allen Hack, son of Monroe Ellis Hack, mailed a package at the request of Ada Miller. Later, the package was seized in the execution of a search warrant by a secret service agent in the United States Post Office at Indianapolis. It contained approximately $2300 in counterfeit $20 notes.

Thereafter, Ada Miller surrendered herself to the secret service agents in Louisville when she discovered that a warrant had been issued for her arrest.

Everett Edward Hack was arrested by secret service agents in Indianapolis, on the 20th day of December, 1951, and a search of his premises at 3727 Massachusetts Avenue was made at that time. Nothing was found or seized in the search.

Defendant states the contested issues in this case are as follows:

(1) Whether or not the evidence was sufficient to support the verdict as to defendant Everett Edward Hack under either or all counts of the indictment.

(2) Whether or not the weight of the evidence was contrary to the verdict as to Everett Edward Hack under either or all counts of the indictment.

(3) Whether or not Everett Edward Hack was substantially prejudiced and deprived of a fair trial by reason of the denial of his Petition for Leave of Court to File Amended Motion for New Trial,

which motion would have contained the following:

(a) Properly recited newly discovered evidence.

(b) Allegations of inadequate counsel during trial based upon allegations showing merely one hour preparation for trial, absence of material defense witnesses, and unchallenged hearsay evidence.

(c) Allegations of lack of testimony discrediting important witnesses at time of trial.

(d) Prejudicial remarks made in Open Court before the jury by government witnesses and defendant's counsel.

▮▮▮ As to contested issues (1) and (2), we find sufficient evidence in the record to support the verdict of the jury. Contested issue (3)(a) seems to dispose of itself as defendant admits in his brief that the "newly discovered evidence" was available at the time of trial, but was not then introduced.

A motion for a new trial based upon alleged newly discovered evidence, is directed to the discretion of the trial judge and is reviewable only for manifest abuse.

As was said in Sharp v. United States, 6 Cir., 195 F.2d 997–998:

"It is contended further that the District Court erred in refusing to grant the motion of appellant for a new trial on the ground of newly discovered evidence. We find no abuse of discretion upon the part of the District Judge in denying the motion. A motion for a new trial, based upon alleged newly discovered evidence, is directed to the discretion of the trial judge and is reviewable only for manifest abuse. See Helwig v. United States, 6 Cir., 162 F.2d 837, 840, and cases there cited. It was pointed out that Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., 'works no change in the practice except to enlarge the time for the consideration of a motion for new trial based upon newly discovered evidence.'"

▮▮▮ Under (3)(b), defendant claims he had inadequate counsel during the trial. The record shows defendant engaged counsel of his own choice many weeks in advance of trial. He employed three different attorneys at different stages of his case. Trial counsel was present throughout the trial and had witnesses available to testify on behalf of defendant. Defendant made no objection to his self-chosen counsel's conduct of the case during the trial. Moreover, this phase of his motion, for leave to file an amended motion for a new trial, does not comply with rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., in that, it was not filed within five days after verdict, nor was the time extended for filing by the court within said five days, as provided in said rule.

In his brief, defendant objected to the admission in evidence of certain statements made by Monroe Ellis Hack, as hearsay. This objection was one of the points listed, and complained of for the first time, in defendant's petition for leave to file an amended motion for a new trial.

The court, during the trial of the case, asked defendant's counsel if there was any objection to this testimony, to which counsel replied "I would like him to ramble on, Judge. There is no objection to it." The court later asked, "Are you waiving any objections?" to which counsel replied, "I am waiving it." Defendant was willing, perhaps as good trial strategy, to permit Monroe Ellis Hack to narrate his version of the case in his own manner, relying perhaps on the later cross-examination of Monroe Ellis Hack and the possible contradictory testimony of defendant to impeach him.

In Burton v. United States, 80 U.S.App. D.C. 208, 151 F.2d 17, 18, the court said:

"The second ground of appeal is the alleged incompetency of appellant's trial counsel. This is based on failure to object to certain testimony and failure to rebut certain evidence. The record affirmatively shows that the case was competently tried. These failures to object which are called to our attention can be defended on the ground that they were good trial strategy. But if this assumption were incorrect they would not be ground for reversal. There are few trials free

from mistakes by counsel. After judgment and on appeal, errors in judgment as to the conduct of the defense are easy to point out. Here the appellant selected his counsel and made no objection to his conduct of the case during trial. Under such circumstances it is well settled that error in judgment, incompetency or mismanagement of the defense by counsel is generally not ground for a new trial. (Citing cases.) This is not to deny that a defendant's rights may be so 'flagrantly disregarded by counsel of his own choosing, and, as a consequence, justice so manifestly miscarry', (citing cases) that a new trial should be ordered."

The record does not show that trial counsel disregarded defendant's rights in this case.

The intentional relinquishment of a known right constitutes a waiver. The court specifically asked defendant's counsel if he had any objections to the testimony, above referred to, and counsel replied in the negative. Can defendant now reverse the position his counsel took at the trial and try a new approach here? We think not. We assume that most defendants who are convicted usually find fault with the attorneys who defended them at their trial. If a defendant were permitted to have a new trial because his self-employed counsel did not conduct the trial in a manner satisfactory to him, there would seldom, if ever, be a final termination of criminal charges.

Where defendant does not object to the admission of objectionable evidence during the trial, such objection is waived and cannot be raised for the first time on motion for a new trial (or) on appeal. United States v. Kadison, 7 Cir., 145 F.2d 525, 526; Burton v. United States, 80 U.S. App.D.C. 208, 151 F.2d 17, 18, 19.

In 3(c) of the contested issues, defendant refers to "allegations of lack of testimony discrediting important witnesses at time of trial." No further reference is found in defendant's brief and no mention is made as to who these witnesses are, nor is any reason or explanation given as to why they were not subpoenaed for the trial.

In 3(d), reference is made to "prejudicial remarks made * * * before the jury." Defendant's brief offers no examples, elaboration, or explanation of 3(d) nor do we find any such contention in the record.

The propositions of law relied upon by defendant appear to express sound rules of law, but they have no application to the facts in this case, as substantial, direct, as well as circumstantial evidence of the guilt of the defendant appears in the record.

Defendant, in his brief, states that in a prosecution for passing or possessing counterfeit money, the money which was passed or possessed must be introduced in evidence. That was done in this case.

Both the $20 counterfeit note passed by Ada Miller, and the package containing $2360 in counterfeit notes, mailed by Lloyd Allen Hack at the direction of co-defendant, Ada Miller, were introduced in evidence and all the notes were identified as counterfeit.

Defendant further contends that mere discussion in contemplation of a conspiracy is not a conspiracy until one or more of the persons involved acts. The record discloses that all three of the defendants performed acts in furtherance of the conspiracy. Ada Miller in passing counterfeit notes, David Bocock in giving counterfeit notes to Monroe Ellis Hack, and the defendant here, Everett Edward Hack, in soliciting the assistance of Monroe Ellis Hack in his criminal enterprise, referring to himself as the "head man" and that Monroe Ellis Hack "would take orders from him."

We have reviewed the record and find evidence, which, if believed by the jury, would support its verdict. Error is assigned and urged on the refusal of the District Court to grant (1) defendant's motion for acquittal at the close of the government's case in chief; (2) his motion for a new trial; and, (3) his motion for leave to file an amended motion for a new trial.

In our judgment no useful purpose would be served by discussing in more detail these

alleged errors, since no reversible error appears upon the record, and no objection or exception was made or taken in the trial upon which error could be predicated.

■ Where the record discloses substantial evidence to support the conviction, the verdict of the jury will not be disturbed. Glasser v. United States, 315 U.S. 60–80, 62 S.Ct. 457, 86 L.Ed. 680; Sharp v. United States, 6 Cir., 195 F.2d 997, 998; United States v. Randall, 7 Cir., 164 F.2d 284.

■ As was said in the Glasser case [315 U.S. 60, 62 S.Ct. 469]:

"It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it. United States v. Manton, 2 Cir., 107 F.2d 834, 839, and cases cited. Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and collocation of circumstances'. United States v. Manton, supra."

The judgment of the District Court is Affirmed.

MAJOR, Chief Judge (concurring in part, dissenting in part).

Judge FINNEGAN'S opinion correctly states the contested issues and contains a fair general statement of the facts. The sole testimony connecting appellant with either of the offenses charged is that of Monroe Ellis Hack, a reading of which causes me to wonder how a jury could have utilized it as a basis for conviction. Appellant is not shown to have been connected with the events and matters which took place in Kentucky after the 13th of December, when Monroe Ellis Hack arrived there from Indianapolis. Monroe Ellis Hack testified that shortly after his conversation with appellant, he called two policemen of the City of Indianapolis and a Secret Service Agent to the hotel and informed them that appellant (his brother) had in his possession some $2,000 in counterfeit money. With this information, it is inconceivable that none of the officers was sufficiently interested to go to the premises of appellant, a few blocks away, for the purpose of seizure or investigation. In fact, no officer testified that he or any of them ever received such information or that he was called by Monroe Ellis Hack or had a conversation with him in the Indianapolis hotel as related. Notwithstanding this significant and unexplained failure on the part of the government to offer testimony corroborating Monroe Ellis Hack as to what took place in Indianapolis, I have decided, with some reluctance, that his testimony was sufficient to connect appellant with the conspiracy charged in the second count. In other words, it presented an issue of fact for the jury.

The first count charges that Ada Miller, on the 15th day of December, 1951, passed a counterfeit $20 Federal Reserve note with intent to defraud and that appellant "did procure the commission of said offense by Ada Miller." A witness testified that Ada Miller passed such a note on the date alleged, which note was identified and offered in evidence. In my judgment, there is not a scintilla of evidence which in any manner, shape or form proves or tends to prove that appellant procured the commission of the offense alleged. Certainly appellant's possession of counterfeit money on December 12, 1951, as testified to by Monroe Ellis Hack, which was not described or identified, is no proof that appellant procured the passage by Ada Miller three days later of a $20 counterfeit note, particularly in view of the fact that such note was not identified as having been in the possession of appellant. Procurement, unlike conspiracy, must encompass something other than a state of mind. To me, it requires some affirmative act of coercion, persuasion or inducement directed to the principal offender. There is not even a word of testimony that Ada Miller had knowledge of appellant's possession of counterfeit money or that they ever had a conversation relative thereto. As I have said before, the acts and events shown to have occurred in Kentucky are irrelevant to the procurement offense. That charge must stand or fall upon the testimony of

Monroe Ellis Hack and, accepting such testimony at its face value, it falls far short of supporting the charge.

I would, therefore, affirm as to conspiracy and reverse as to procurement.