(No. 34402.—■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS DAVIS, Plaintiff in Error.

*Opinion filed March 20, 1958.*

KOVEN, KOVEN, SALZMAN & HOMER, and MOORE, MING & LEIGHTON, both of Chicago, (PAUL HOMER, and GEORGE N. LEIGHTON, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, FRANCIS X. RILEY, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant, Louis Davis, brings this writ of error to review the judgment of conviction rendered against him in the criminal court of Cook County for a sale of narcotics to a minor, Raymond White, in violation of the

Uniform Narcotic Drug Act of the State of Illinois. Upon denial of motions for new trial and in arrest of judgment, the defendant was sentenced to a term of from five years to life in the State penitentiary.

From the record it appears that one Raymond White, then 20 years of age, was arrested December 29, 1955, for possession of narcotics. On January 3, 1956, White was searched by police officers, and finding no money or personal effects, other than clothing, he was supplied, subsequently, with seven dollars by the police. The serial numbers of the bills were registered by the police. He was then taken to the vicinity of 39th and Cottage Grove streets in the city of Chicago, where, under the surveillance of police, he entered a drug store and met one Lavera Coleman. Both White and Coleman testified that he asked her to purchase some narcotics for him, and gave her six or seven dollars. Coleman then left the drugstore, followed by White, and entered the Powers Restaurant across the street. White remained in the vestibule of the restaurant. Inside the restaurant Coleman met and spoke to the defendant, Louis Davis. Coleman says she gave the money to defendant in the washroom which is not visible from the vestibule, and White says he saw the money pass hands in the restaurant. Nevertheless, Coleman testified she told Davis "I want a cop, Heavy," and that he told her she would have to wait a while. Coleman then rejoined White and proceeded to the 820 Liquor Store. Shortly thereafter Coleman left and met Davis in a poolroom across the street where Davis handed her a brown paper package, which she took to White. White returned to the police car where a field test was made of the contents of the package, which proved to contain an opium derivative. The police then entered the H & C Tap and arrested Davis, Coleman and other customers.

The police examined the money in the possession of Coleman and Davis. Davis was found to be in possession

of a five and a one-dollar bill bearing the serial numbers of bills supplied to White.

Coleman and Davis were both indicted at the January, 1956, term of the Cook County grand jury, for the crime of selling opium to a person under 21 years of age, Raymond White, then 20; and for the crime of dispensing opium to a person under 21 years of age, Raymond White, then 20. Upon arraignment, Davis pleaded not guilty, and upon trial contended that he must have received the bills in change at the H & C Tap.

Defendant urges (1) that the evidence fails to prove that he, Louis Davis, unlawfully, feloniously, wilfully, and knowingly sold narcotics to Raymond White, a person under 21 years of age; (2) that the evidence is insufficient to establish a sale of narcotics; and (3) that the court erred in permitting People's exhibits 4 and 7 to go to the jury bearing hearsay evidence written upon them.

It is provided in the Uniform Narcotic Drug Act of the State of Illinois, (Ill. Rev. Stat., 1955, chap. 38, par. 192.23) that "Whoever violates this Act by selling, prescribing, administering, or dispensing any narcotic drug to any person under 21 years of age, shall be imprisoned in the penitentiary for any term from 2 years to life." The defendant, Louis Davis, is not a licensed manufacturer, wholesaler, apothecary, or professional person authorized to make, use or sell narcotic drugs by the Uniform Narcotic Drug Act.

There is a complete absence of any evidence of a sale of narcotic drugs by the defendant to Raymond White. Nothing indicates that White and Davis ever met, or had any dealings with one another. Any sale of narcotic drugs by defendant, so far as this record indicates, was to Lavera Coleman. There is no showing that Coleman was an agent or intermediary of defendant. White testified he had never purchased narcotics from or through Coleman previously, nor is there any testimony that he even knew that Coleman

could procure narcotics for him, other than that he knew her to be a "user." In all of the testimony relative to the transaction, Coleman purported at all times to be acting for herself alone in making the purchase. White was never in the company of Coleman when she conducted any part of the transaction for the purchase of the narcotic.

The People depend entirely on one statement by Davis to the police to indicate that he knew the narcotics were being sold to White, a minor. When arrested, officer Sims testified that Davis "popped" his fingers and said "Doggone it, I knew that guy in the white coat was wrong," and that White wore a white or cream colored trench coat on the night of the alleged occurrence. To infer from this remote and unexplained statement that Davis sold narcotics to White is a most strained and uncorroborated application of the evidence, and hardly serves to extinguish doubt.

The crime for which defendant was indicted and convicted was that of selling narcotic drugs to a minor, Raymond White. This court cannot and does not condone the illicit trade in narcotic drugs, but the evidence in this case fails to sustain the crime charged. It may well establish a sale of narcotic drugs in violation of the Uniform Narcotic Drug Act of this State. However, we are not called upon to decide that issue, but to determine if the crime of selling narcotic drugs to a minor is proved beyond reasonable doubt. It is incumbent upon the People to prove beyond a reasonable doubt each of the elements necessary to constitute the crime charged. (*People* v. *Becker*, 414 Ill. 291.) They have failed to prove a sale to the minor, Raymond White, by the defendant. Consequently, the conviction cannot stand, and the judgment must be reversed. For this reason it is unnecessary to consider the other causes of error assigned.

The judgment of the criminal court of Cook County is, therefore, reversed.

*Judgment reversed.*