(No. 36876.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD WASHINGTON, Plaintiff in Error.

*Opinion filed September 27, 1963.*

RICHARD HIRSHIRITT, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Harold Washington, and co-defendant, Willie Lee Lewis, were jointly indicted by the grand jury for the unlawful sale of narcotic drugs. They were tried together before the court without a jury, found guilty, and each was sentenced to the penitentiary for a term of not less than 10 nor more than 12 years. The conviction of Lewis has been previously affirmed by this court. *People* v. *Lewis,* 26 Ill.2d 542.

The defendant contends here that the evidence fails to establish that he sold narcotics to the person named in the indictment, George Robinson, Jr., but instead shows only a sale to the co-defendant Willie Lee Lewis, and that his conviction must be reversed. *People* v. *Davis,* 13 Ill.2d 211.

Around noon on January 9, 1959, officer Robinson, a narcotics inspector for the city of Chicago, met with the co-defendant, Willie Lee Lewis, a drug addict, at the Cyril Hotel on Chicago's south side. Robinson, whose official capacity was not disclosed there, told Lewis that he wanted to purchase some narcotics. Lewis indicated he was willing to make the purchase in his behalf. Shortly thereafter Lewis and Robinson left the Cyril Hotel together and proceeded to a club on East 35th Street. Prior to entering the club, Robinson gave Lewis $8 in prerecorded bills. They were unable to purchase the desired narcotics

at the club and therefore proceeded to a restaurant near the corner of 35th Street and Rhodes Avenue. Lewis entered the restaurant while Robinson waited just outside the door. Inside the restaurant Lewis talked with the defendant, Harold Washington, who was also a drug addict. Lewis, then testifying on direct examination as a defense witness, stated that he asked Washington if he would do him a favor and purchase some narcotics "for me and my friend." Lewis explained that he could not purchase the narcotics directly because he owed money to the narcotics dealer.

Washington then admittedly agreed to make the purchase and Lewis gave him the money which he had received from Robinson. Washington testified, however, that Lewis told him that he only wanted the narcotics for himself, and that he did not mention any friend. Lewis testified that as they came out of the restaurant he introduced the defendant to Robinson and identified him as the friend who wanted the narcotics. Washington admitted that he saw Robinson standing outside the restaurant but claimed that no introduction was made. Robinson, who testified as a prosecution witness prior to Lewis, stated simply that he noticed Washington and Lewis conversing as they came out of the restaurant and observed Washington gesture to Lewis and thereupon run away. After Washington left, Robinson asked Lewis if Washington had the money. Lewis said he had, and that they were to go to a housing project at 511 Browning street where they were to wait in the first floor lobby. Another police officer, Stribling, who had been watching the restaurant, testified that he noticed Robinson and Lewis as they were walking together towards the housing project and that he saw the defendant approach them from the rear and pass them up. Robinson then proceeded with Lewis to the housing project where, in a few minutes, Washington appeared at the rear of the lobby. Lewis went up to Washington and Robinson

followed. Washington then handed Lewis two packages of aluminum foil which contained a white powder and then both Lewis and Washington turned and left. When they were a few feet away Lewis handed the packages to Robinson. Lewis then started to go out the rear exit and Robinson arrested him. Robinson then ran back into the building, through the lobby, and out the front door where he arrested Washington.

A field test of the contents of the packages that were received from Lewis indicated a positive reaction and a chemical analysis of same showed that the packages contained heroin hydrochloride, a narcotic drug known as heroin.

A search of the person of Harold Washington after his arrest by Robinson produced one of the bills, the serial number of which Stribling had previously recorded.

The defendant does not dispute that a conviction can be based upon the testimony of a co-defendant and accomplice, even if contradicted by the accused, if it is sufficiently corroborated by other credible evidence. (See, *People* v. *Baker,* 16 Ill.2d 364.) The defendant argues, however, that Lewis's testimony to the effect that Washington knew that the narcotics were being purchased for both Lewis and Robinson was not corroborated. Therefore, he further argues that his own testimony that a sale only to Lewis was intended must be given equal weight to that of an admitted accomplice. (See, *People* v. *Harvey,* 321 Ill. 361.) Under this theory the allegation contained in the indictment of a sale to Robinson would not have been proved beyond all reasonable doubt, and the conviction based upon said indictment would have to be set aside.

However, in our opinion Lewis's version of Robinson's participation in this transaction was corroborated by other competent evidence. The defendant, although he denied that a formal introduction occurred, did admit that he took sufficient note of Robinson on the occasion of his first

seeing him just outside the restaurant so as to be able to later recognize him. The only explanation in the record for the defendant's having so observed Robinson is Lewis's testimony that he introduced Robinson to the defendant and that he then identified him as the friend who desired to purchase the narcotics. The defendant passed next to Robinson and Lewis as they were all heading towards the prearranged meeting spot, where the defendant, in Robinson's presence, delivered the narcotics to Lewis. After the narcotics had been delivered to him, Robinson, prior to the arrest, called out to the defendant, who stated that he then stopped and "went back to see what he wanted," indicating that defendant knew that Robinson was in some way involved in the transaction.

This testimony hardly seems consistent with the defendant's suggestion that Robinson was present throughout most of the sales transaction, including the carefully arranged secret meeting place, as a total stranger whose presence was never in any way explained to the defendant. It seems highly improbable that, if such were the case, the defendant would have completed the sale and delivered the narcotics to Lewis. On the contrary the foregoing evidence in our opinion fully supports the co-defendant Lewis's explanation that Robinson was there because he too was known to Washington to be one of the prospective purchasers.

Lewis did not testify for the prosecution but was offered as a defense witness. He was not shown to have been motivated by any promises of leniency and in fact received none. The trial judge alone, where a jury trial is waived, has the obligation of determining where the truth lies, and his finding "must stand unless we can say that the proof is so unsatisfactory as to justify us in entertaining a reasonable doubt of defendant's guilt." (*People* v. *Perkins,* 26 Ill.2d 230.) In our opinion the trial court in this case was justified in relying upon the corroborated testimony of

Lewis in preference to that of the defendant. Accordingly the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*