**Charles POWERS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 9, 1975.

Donald L. Cox, Louisville, for appellant.

Ed W. Hancock, Atty. Gen., Robert W. Riley, Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

Charles Powers and Richard Allen Roberts were jointly indicted for the illegal sale of narcotics to W. Harper and L. Hile. The jury found Powers guilty on one count and fixed his punishment at ten years' imprisonment and a $10,000 fine and found Richard Allen Roberts guilty on two counts and fixed his punishment at five years' imprisonment on each count. Powers and Roberts prosecute separate appeals from the judgment entered upon the jury's verdict. We consider here the appeal of Charles Powers.

Powers asserts that the evidence was insufficient to convict him of a sale of narcotics as alleged in the indictment and under the instructions given; and he was, therefore, entitled to a directed verdict of not guilty.

W. Harper and L. Hile, members of the Louisville Police Department, were on assignment with the narcotics bureau as undercover agents. On the night of July 30, 1973, they became acquainted with Richard Allen Roberts while talking with a number of people gathered around the officers' parked automobile in the parking lot of a housing project. Roberts got into the automobile with Harper and Hile and after additional discussion volunteered to get them some white heroin. They were receptive to the offer and paid him $40 at the time. After an unsuccessful attempt to make a buy in the 700 block of Cecil Avenue, Roberts directed Harper and Hile to take him to 34th and Duvall Drive. Roberts got out of the automobile, walked up the street to an opening between two buildings and then along a walk between the buildings to what would be the entrance to the third apartment from the street, where he met a man later identified as Charles Powers. Harper had followed Roberts at a distance and was approximately 40 feet behind him when he met Powers. Harper claims that he observed Powers transfer something to Roberts in return for the money that Roberts had in his hand. Harper returned to the automobile. He was followed a short time later by Roberts who, upon entering the automobile, handed Hile four bindles of heroin that he had obtained from Powers.

Powers testified that Roberts was, at the most, a casual acquaintance; that he did not know Harper and Hile; and had not seen either of them until the day of the trial. Powers denied any sale of heroin to Roberts, Harper, Hile, or anyone else. Roberts testified that he had never purchased heoin from Powers and further that he had never seen either Harper or Hile until after he was arrested.

Count three of the indictment against Roberts and Powers charged:

"That on or about the 30th day of July 1973, in Jefferson County, Kentucky, both the above named defendants, Charles Powers and Richard Allen Roberts, unlawfully sold to W. Harper and L. Hile an amount of narcotics known as Heroin."

Instruction No. 1, as given by the court, said:

"If the jury believe from the evidence in this case beyond a reasonable doubt, that on or about the 30th day of July, 1973, in Jefferson County, Kentucky, and before the finding of the indictment herein, the defendant, Charles Powers, did unlawfully, wilfully, knowingly and feloniously sell to W. Harper and L. Hile an amount of narcotic known as Heroin, then you will find him guilty as charged in Count 3 of the indictment and fix his punishment at confinement in the penitentiary for not less than five nor more than ten years, or by a fine of not less than $5,000 nor more than $10,000, or you may both so fine and imprison him, in your discretion."

The jury returned the following verdict:

"We, the jury, find the defendant, Charles Powers, guilty under Instruction No. 1 and fix his punishment at 10 YEARS & $10,000.00.

/s/ Rev. Clifford Anthony Jr., Foreman"

An identical instruction No. 2 was given as to Richard Allen Roberts regarding the sale of July 30, 1973. The jury found him guilty as charged under this instruction and fixed his punishment at five years' imprisonment. Roberts was also found guilty and given five years on another charge that did not involve Powers.

Consequently we have here the anomalous result of two persons being convicted of selling the same four bindles of heroin to Harper and Hile, although there was no

evidence that one of them, Powers, knew or was aware of the existence of the undercover agents or that they in any way participated in the asserted sale between Powers and Roberts. The identity of the undercover agents was unknown to both men, and it is conclusively shown that Roberts was not their agent. The only evidence introduced by the prosecution concerning the sale, alleged in count three of the indictment, was of a transaction observed by Harper between Powers and Roberts. Harper could not be classed as a participant in this transaction, his involvement being limited to supplying money to Roberts so he could buy heroin from someone.[1]

Count three of the indictment charged Powers with a sale of heroin to Harper and Hile and not to Roberts. Instead Roberts was also charged with making the same sale to Harper and Hile. There was absolutely no evidence of a sale from Powers to Harper and Hile, or anything that might implicate him as being a participant to any degree in the sale from Roberts to Harper and Hile. At the most, the cumulative effect of the evidence introduced by the prosecution showed a sale by Powers to Roberts, a crime which was not charged in the indictment.

Our research reveals that there is no authority in Kentucky on this specific issue. However, in other jurisdictions considering the question, the courts have ruled that the accused seller did not sell to the ultimate buyer.

In People v. Bueno, 35 Ill.2d 545, 221 N.E.2d 270 (1966), Bueno was convicted of selling narcotics to Eugene Nicoletti, a police officer. While concealing his identity, Nicoletti persuaded Thomas Wright to sell him some narcotics and gave him money so he could make a purchase. Nicoletti followed Wright until he came out of a poolroom, at which time he handed Nicoletti the narcotics and gave him a description of the seller. Later Bueno was arrested and found to be in possession of the money that Nicoletti had previously given Wright. In reversing Bueno's conviction the court said:

"The defendant contends that the judgment of conviction must be reversed because the indictment charged him and Wright with the sale of narcotics to Nicoletti and the evidence shows, at the most, that the defendant sold narcotics to Wright. We agree with this contention. In People v. Davis, 13 Ill.2d 211, 148 N.E.2d 771, the defendant was charged with the sale of narcotics to White, a minor. The evidence showed that White had been arrested for possession of narcotics. He was supplied with money by the police for the purpose of purchasing narcotics. White gave the money to a third party who purchased narcotics from the defendant, and then delivered the drugs to White. There was no evidence that the defendant had ever met or had any dealings with White. We held that so far as the record indicated, any sale of narcotics by the defendant was to the third party and reversed the judgment of conviction because the evidence failed to prove the crime of selling narcotics to White as alleged in the indictment. In People v. Sullivan, 23 Ill.2d 582, 179 N.E.2d 634, George Sullivan and Anthony Latino were indicted for selling narcotics to Sterling Hart. Arrangements were made by the police for the controlled purchase of narcotics by Hart. Hart was given money to make the purchase and gave the money to Latino who returned with narcotics which he gave to Hart. Thereafter, Sullivan was arrested and the money which had been given to Hart was found in Sullivan's possession. Sullivan admitted selling narcotics to Latino. We held that while the evidence showed that Sullivan might have sold narcotics to Latino, it did not show that he participated in any

---

1. Discussion of evidence limited to that affecting Powers only.

sale to Hart. We reversed the judgment of conviction, relying on the *Davis* case. We are of the opinion that the facts here cannot be distinguished from those in the *Sullivan* and *Davis* cases.

\* \* \* \* \* \*

"There was no evidence that the defendant had any knowledge that Nicoletti was the ultimate purchaser and at the most the evidence showed a sale by the defendant to Wright, a crime which was not charged in the indictment."

The evidence against Charles Powers did not support the submission of his case to the jury on the offense charged in count three of the indictment. If upon another trial the evidence is substantially the same, he will be entitled to a directed verdict of acquittal.

The judgment is reversed for further proceedings consistent with this opinion.

REED, C. J., and JONES, LUKOWSKY, PALMORE, STEPHENSON and STERNBERG, JJ., concur.

CLAYTON, J., dissents.

CLAYTON, Justice (dissenting).

I respectfully dissent from the majority opinion. From the evidence as developed by setting out the chain of events which transpired on the night of July 30, 1973, I would hold that there was a submissible case to the jury on the question of whether Powers sold the heroin in question to officers Harper and Hile. Further, by reason of the jury's conviction of Powers under the instruction given, it must be assumed that Roberts was viewed as either *acting for* Harper and Hile or was being *used* by them as an aid in performing their official duties, and that any sale by Powers to Roberts was tantamount to a sale to Harper and Hile.

As the majority opinion notes, there is no authority in Kentucky on this specific issue. Insight into the particular problem presented here may be gained by considering United States v. Barcella, 432 F.2d 570, 571, 572 (1 Cir., 1970) (a case involving a prosecution for sale of narcotics brought against an intermediary used by a police officer to purchase heroin from a supplier). The court in discussing the defense forwarded by Barcella stated:

"The procuring agent theory is new to this circuit. So far as we can discover, it was initiated in United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169, and now appears to be accepted in a majority of the circuits. [Citations omitted]. In essence the theory is that if the defendant, in procuring the drugs and delivering them to the recipient, acted solely as the agent of the recipient, and in no other capacity, then the delivery was the *transfer by an agent to his principal of what already belonged to the principal* \* \* \*." (Emphasis added).

This language from *Barcella*, stating the majority view, indicates that an intermediary *could be* merely a conduit between the actual seller and the eventual real buyer. The court in *Barcella*, however, rejected the majority view in that case with its unique facts, choosing instead to allow the jury to determine the ultimate issue of whether there had been a "sale" and said at page 572:

"\* \* \* [T]he jury could infer that he retained or received a portion of the sales price as a profit or commission from the supplier.

"\* \* \* By the same token, a jury might rationally consider that a defendant who was ready, able and willing to enter the transaction \* \* \* was a seller, *or an associate or agent of a seller, however much he might maintain that he was only accommodating the*

*buyer.* Such matters must be left to a jury's good judgment." (Emphasis added).

Since there was no evidence whatever of any direct sale from Powers to officers Harper and Hile, the jury must necessarily have believed, as was their right under the evidence of this case, that Roberts was the agent of officers Harper and Hile and the sale and delivery of the drugs from Powers to Roberts was, in effect, a sale and delivery from Powers to officers Harper and Hile.