THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID FULLER *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 81—2194, 81—2267 cons.

Opinion filed July 19, 1983.—Rehearing denied August 23, 1983.

George P. Lynch, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendants, David Fuller and his wife, Rebecca Fuller, were indicted for rape (Ill. Rev. Stat. 1977, ch. 38, par. 11—1), unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, par. 10—3), and attempted deviate sexual assault (Ill. Rev. Stat. 1977, ch. 38, par. 8—4). Prior to trial, the State dismissed the unlawful restraint charge. In a jury trial, defendants were acquitted of rape and convicted of attempted deviate sexual assault. Each defendant was sentenced to serve seven years in the Illinois Department of Corrections.

On appeal, defendants contend that the trial court erred in denying their motions to quash a search warrant issued on September 24, 1979; that the court should have severed Rebecca's case from David's; that the prosecutors interfered with defense counsel's investigation of this case and failed to tender all discoverable material; that the State used its peremptory challenges to exclude blacks from the jury solely because of their race; that the court erred in admitting evidence of similar occurrences to show a common design or *modus operandi*; that defendants' rights of confrontation were violated when the out-of-court declarations of co-conspirators were received into evidence prior to a *prima facie* showing that a conspiracy existed; that the court erred in precluding a defense witness from testifying about a State witness' reputation for truth and veracity; that the court erred in applying the rape shield law (Ill. Rev. Stat. 1981, ch. 38, par. 115—7a) to a witness other than the prosecutrix; that defendants were not proved guilty beyond a reasonable doubt; and that the State failed to prove that Rebecca was accountable for David's actions. For the rea-

sons hereinafter stated, we affirm the defendants' convictions.

The prosecutrix, Dorothy W., who was 21 years old at the time of trial (June 1981), testified as follows:

On October 7, 1979, she was living with a friend, Frances Pass. Pass answered a help wanted advertisement in the Chicago Sun-Times which read:

"Light housekeeping. Girl to live in. Must like country living and travel. Room and board. Small salary. Call 361-2393."

A man identified as defendant David Fuller came to Pass' home to interview Pass for the job. At Dorothy's request, David agreed to consider hiring her if he and his wife needed her. On October 9, 1979, Dorothy called the number listed in the advertisement and was told that she could reach defendants at the Orland Park Bowling Alley. She called the bowling alley from "John's Garage," a restaurant and bar in the Ford City shopping center where she had been with Frances Pass, spoke with defendant Rebecca Fuller and arranged to meet her there. Dorothy hitchhiked to the bowling alley and met both defendants. After defendants finished bowling at approximately 9:30 p.m., they drove Dorothy to their home at 2 Dan Mar Trail in Palos Park, Illinois. They arrived at approximately 10 p.m.

Dorothy entered the family room where David served her an alcoholic drink which made her unusually "woozy." She did not see David prepare the drink. David mentioned defendants' background and explained their need for a live-in babysitter. He then asked Dorothy whether she had a boyfriend, whether she had ever had sexual relations with anyone and whether she had ever seen a pornographic movie. She responded negatively to all three questions. When David began to discuss his own work, Rebecca left the room. David asked Dorothy if she wanted to watch a pornographic movie. Dorothy said, "No." Rebecca then returned to the family room naked and David began to show a pornographic movie. The movie was projected onto a white wall. Dorothy glanced at the film and at Rebecca, told defendants that she did not want the job and attempted to leave their house.

David knocked her to the floor near the base of the stairs leading from the family room to the second floor and attempted to put his penis in her mouth. David lifted Dorothy's blouse and bra and began fondling her breasts. He then removed her slacks, pulled her panties down around her ankles and put his penis into her vagina. Throughout the assault, which lasted approximately 15 minutes, Rebecca sat naked on a chair in the family room. In struggling with David, Dorothy bruised her left knee.

Dorothy finally managed to throw David off of her. She picked up

her bag of clothes and ran out of the house as David laughed at her. Although she was not wearing a watch, she estimated that she left defendants' house sometime between 11:15 and 11:30 p.m. She dressed in some nearby bushes and began to hitchhike back to the Ford City shopping center. She told the first person who picked her up that she had a bad experience but did not want to talk about it. After getting another ride from a couple, she arrived at the shopping center sometime between 12:30 and 1 a.m. "John's Garage" was closed and she could not find anyone she knew. She discovered her friend Frances Pass' unlocked automobile in the parking lot and slept in it that night.

Later that morning, Dorothy washed herself and changed clothes in a public bathroom in the shopping center and tried unsuccessfully to telephone Pass. Late in the afternoon or early in the evening, she again entered "John's Garage" and met an acquaintance, Richard Addison. Dorothy told Addison that someone had tried to rape her during a job interview. She also told him that her assailant had "put something in her drink." Addison advised her to call the police, which she did. Dorothy was eventually taken to the Orland Park police station by another friend and then to Palos Community Hospital by the police. At the hospital, she was examined by Dr. James T. Bolan. Dr. Bolan, a defense witness, stated that all tests for the presence of sperm and semen were negative.

On cross-examination, Dorothy denied that she stayed overnight in defendants' home or that Rebecca drove her to the corner of 159th Street and Cicero Avenue at 9 a.m. on October 10, 1979. Dorothy also denied that defense photographs accurately depicted the condition of defendants' family room in October of 1979. In the photographs, the walls in the room were completely paneled with wood and a large aquarium was now positioned where Dorothy said David attacked her.

Dorothy denied that she told Sergeant Reilly of the Orland Park police department that she left defendants' house at 5 or 5:30 a.m. on October 10, 1979, or that she arrived at the Ford City shopping center at 6:30 a.m. Defendants attempted to impeach Dorothy with a police report Sergeant Reilly prepared which indicated that Dorothy left defendants' home at 5 a.m. and arrived at the shopping center at approximately 6:30 a.m. on October 10. Reilly, however, testified that he had prepared two reports, the first at the conclusion of his initial interview with Dorothy, which lasted about 20 minutes, and the second following a 2½- to three-hour interview with her. Reilly explained that the times listed in the first report were his own estimates. Reilly stated that the second report, which indicated that Dorothy left

defendants' house near midnight and arrived at the shopping center at approximately 2 a.m., was more accurate.

Following Dorothy's testimony, the State introduced the testimony of two witnesses, Dina P. (Dina) and Melody G. (Melody), who allegedly had experiences with defendants similar to Dorothy's. Dina and Melody did not know each other or Dorothy until shortly before trial. Defendants' objections to their testimony were overruled. The substance of their testimony and its admissibility will be discussed below.

Rebecca testified that Dorothy had stayed all night with defendants at their invitation. Shortly before 9 a.m. the next morning, she drove Dorothy to the corner of 159th Street and Cicero Avenue and gave her money to catch a bus. Rebecca denied that Dorothy had been sexually assaulted. She also denied that she had appeared naked in Dorothy's presence.

In rebuttal, the State presented evidence corroborating the prosecutrix' description of defendants' family room and establishing that defendants possessed photographic equipment, movie projectors and substantial quantities of pornography.

I

■ We first address defendants' contention that the trial court erred in denying their motions to quash a search warrant which was issued on September 24, 1979. Although the defendants argue that the warrant lacked specificity, we are unable to reach the merits of this argument because defendants have failed to include in the record on appeal either the warrant itself or the complaint for the warrant. It is the defendants' responsibility to present a record of sufficient completeness so that their claims of prejudice may be knowledgeably considered. They have not met this responsibility and in the absence of a complete record, we must presume that the trial court did not err in denying defendants' motion to quash. *People v. Wilson* (1981), 92 Ill. App. 3d 370, 386, 415 N.E.2d 1315.

We also note that no physical evidence that may have been seized in executing this warrant was introduced by the State. The only evidence stemming from the execution of the warrant consisted of a police officer's rebuttal testimony corroborating the victim's description of defendants' family room and establishing that defendants possessed photographic equipment, movie projectors and pornography. Defendants' motions to quash were not specifically addressed to this evidence. Thus, the issue has been waived. Moreover, since the testimony of the officer was merely cumulative of other evidence presented at trial, the error, if any, in the court's denial of defendants' motions to

quash must be deemed harmless.

## II

■ We next consider Rebecca's contention that her case should have been severed from David's.

It is well established that defendants jointly indicted are to be jointly tried unless their defenses are antagonistic or unless one codefendant would be denied his right of confrontation. (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461.) Rebecca does not claim that she was entitled to a severance on either ground. (But see Argument VI below.) Accordingly, we find no error in the trial court's denial of her motion for a severance.

## III

Defendants contend that the prosecution interfered with defense counsel's investigation of this case and failed to tender all discoverable material. Specifically, defendants allege that the prosecutors instructed their witnesses not to discuss this case with defense counsel; failed to provide witnesses' addresses; concealed the prosecutrix' arrest for possession of a controlled substance (Valium) and then assisted her in having the charge against her dismissed; refused to produce notes of their interviews with witnesses; and threatened defense counsel with criminal prosecution. The record does not support any of these allegations.

The record discloses that the prosecutor advised the State witnesses that if they were contacted by defense counsel, they could answer his questions, refuse to be interviewed by him or insist upon speaking with him only in the presence of an assistant State's Attorney. Some witnesses agree to speak with defense counsel while others refused or insisted upon being interviewed only at the offices of the State's Attorney. We find no error in this. The record also reveals that the addresses of the State witnesses were provided to defense counsel within one week after they were obtained by the State.

In May of 1981, the prosecutrix was arrested for possession of a controlled substance (Valium) for which she had a prescription from her physician. One of the prosecutors in this case advised her to obtain a letter from her physician confirming that she had a prescription from him for the drug and to present the letter, together with the prescription, when she went to court on the possession charge. The prosecution did not give her any other advice or assistance, and the charge was dismissed when she appeared in court. The prosecutor disclosed this information in open court. There was no evidence that the

prosecutrix was promised any consideration on the drug charge in exchange for her testimony in this case.

Defendants' next instance of alleged prosecutorial obstruction is also devoid of support in the record. At defendants' request, the trial court held an *in camera* inspection of the prosecutors' notes of their interviews with witnesses. The court excised those portions of the notes which constituted nondiscoverable work product under Supreme Court Rule 412(j)(i) (87 Ill. 2d R. 412(j)(i)) and turned over to defendants the nonprivileged materials pursuant to Rule 412(a)(i) (87 Ill. 2d R. 412(a)(i)). (See *People v. Szabo* (1983), 94 Ill. 2d 327, 343-45.) Any error in the court's decision to exercise certain portions of the notes has been waived by defendants' failure to have the notes impounded by the trial court and transmitted to this court for our own review.

Finally, defendants assert that improper threats of criminal prosecution were made to defense counsel and his staff by one of the prosecutors in this case. The record shows that the prosecutor asked the trial court to admonish defense counsel not to permit his investigator to harass one of the State witnesses who had testified and had been excused. The prosecutor stated his intention to enforce that section of the criminal code which is designed to prevent the harassment of jurors or witnesses who have testified. (Ill. Rev. Stat. 1981, ch. 38, par. 32—4a.) The record does not support defendants' claim that the prosecution interfered with or obstructed defense counsel's investigation of this cause.

## IV

Citing *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046 (appeal pending, Docket No. 56907), defendants contend that the State improperly used its peremptory challenges to exclude blacks from the jury solely because of their race. In *Payne*, the appellate court held that the use of peremptory challenges by the State to exclude blacks from a jury during *voir dire* because they are black violates the defendants' sixth amendment right to a jury drawn from a fair cross-section of the community. In light of our supreme court's recent rejection of that holding in *People v. Williams* (1983), 97 Ill. 2d 252, 273-79, further discussion of this argument is unnecessary.

## V

Defendants contend that the trial court erred in admitting evidence of similar occurrences to show a common design or *modus operandi*.

As a general rule, evidence that a defendant has committed

an offense other than the one for which he is being tried is inadmissible. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Evidence of other offenses is admissible, however, if relevant for any purpose other than to show the defendant's propensity to commit a crime. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) Thus, evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may also show the commission of a separate offense. 62 Ill. 2d 448, 455.

Defendants assert that since there was no issue in this case that the prosecutrix had visited their home and could identify them, there was no reason to admit evidence of similar occurrences. We disagree.

■ Evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed a crime but also to the issue of whether a crime was committed at all. (*People v. Middleton* (1976), 38 Ill. App. 3d 984, 990, 350 N.E.2d 223; *People v. Mitchell* (1981), 95 Ill. App. 3d 779, 791, 420 N.E.2d 415; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 69, 392 N.E.2d 251.) Thus, evidence of a common design or *modus operandi* has been held admissible in prosecutions for sex offenses even where the identity of the accused was not in dispute. (*People v. Carter* (1981), 98 Ill. App. 3d 720, 722-24, 424 N.E.2d 367; *People v. Osborn* (1977), 53 Ill. App. 3d 312, 318, 320-23, 368 N.E.2d 608; *People v. Middleton* (1976), 38 Ill. App. 3d 984, 990, 350 N.E.2d 223.) *Osborn* is particularly instructive.

In *Osborn*, the defendant was convicted of rape and deviate sexual assault. The victim testified that she made a telephone call in response to a help wanted advertisement in the Chicago Tribune which has been placed by the defendant. The defendant returned her call and arranged to interview her at his apartment. No decision was made regarding the position at that interview. A few days later, defendant again called the victim and said that he wanted to finish discussing the job interview. He arranged a date with her and later in the evening raped her and committed an act of deviate sexual assault upon her in her apartment. In *Osborn*, the State presented the testimony of another woman who stated that she also responded to the defendant's advertisement and that defendant had attempted to rape her.

The court noted the following similarities between the two incidents:

> "In both cases, the woman made contact with the defendant by means of a newspaper advertisement for help. In both cases, the original contact was for employment but, in good part as a result of the efforts of defendant, the relationship soon broad-

ened into a social and more personal type of contact. Both of the incidents occurred in the privacy of the homes of the respective complainants to which defendant had been invited. In both situations defendant expressly told the woman he was going to have sexual relations with her. In both cases he depended upon physical force in commencing to obtain his stated desire. In both instances he seized the woman forcefully by the throat. In both cases, however, the defendant's conduct was sexually motivated." 53 Ill. App. 3d 312, 321.

Acknowledging that there were differences between the two situations, the court stated that "the factual similarities between these two situations are so strong and persuasive that they are sufficient to make evidence of the earlier offense relevant as proof of the existence of a common design and *modus operandi*." (53 Ill. App. 3d 312, 321.) There was no issue of defendant's identity in *Osborn*.

A review of the testimony of Dina P. and Melody G. reveals the following similarities between their experiences with defendants and those of the prosecutrix in this case: all three victims were young girls who answered virtually identical newspaper advertisements placed by Rebecca under her maiden name, Rebecca Trammel; either Rebecca or David answered the telephone when Dina and Melody called the number listed in the advertisement; defendants drove considerable distances to bring the girls to their home for an interview; Dorothy and Dina were both served alcoholic drinks which made them "woozy" or "light-headed"; David described his work and educational background with all three girls and, in each case, the conversation turned to a discussion of sex and defendants' liberal lifestyle; Dorothy and Dina were shown pornographic movies and Melody was shown pornographic magazines; Rebecca appeared in the nude in all three instances and directly participated in the sexual assault of Dina and Melody; David committed or attempted to commit deviate sexual acts and sexual intercourse with each of the three girls and used the same words to try to persuade Dorothy and Dina not to resist his advances.

While, as defendants observe, the incidents involving Dina and Melody were not identical in every respect to the one involving Dorothy, exact identity is not required to admit evidence of other crimes. (*People v. Osborn* (1977), 53 Ill. App. 312, 320, 368 N.E. 2d 608.) It is sufficient if the similar acts, considered together, yield a distinctive combination. (*People v. Butler* (1978), 63 Ill. App. 3d 132, 140-41 n.1, 379 N.E.2d 703.) In our judgment, these other offenses, like the other offense in *Osborn*, shared peculiar and distinctive common features which tended to establish a common scheme or design

and the same *modus operandi*. We note further that this was the reason the State gave for offering this evidence.

The striking similarity of the other sexual assaults was relevant to the issue of whether a crime was actually committed. Moreover, evidence of other crimes has been permitted where necessary to explain the circumstances of a crime which would otherwise be unclear or improbable. *People v. Cole* (1963), 29 Ill. 2d 501, 505, 194 N.E.2d 269; *People v. Turner* (1979), 78 Ill. App. 3d 82, 92, 396 N.E. 2d 1139.

Defendants, however, maintain that the testimony of Dina and Melody was not "clear and convincing." One of the criteria for admission of other crime evidence under Rule 404(b) of the Federal Rules of Evidence is that the evidence must be "clear and convincing." (*United States v. Berkwitt* (7th Cir. 1980), 619 F.2d 649, 654; *United States v. Dolliole* (7th Cir. 1979), 597 F.2d 102, 106-07.) Defendants cite no Illinois decisions adopting this standard.

██ █ Where evidence of other offenses is admitted to show a common scheme, proof of these other crimes need not be beyond a reasonable doubt. (*People v. Fletcher* (1978), 59 Ill. App. 3d 310, 320, 375 N.E. 2d 1333.) For example, in *People v. Parker* (1976), 35 Ill. App. 3d 870, 873-74, 343 N.E.2d 52, the court held that evidence of another crime to prove intent was properly admitted notwithstanding defendant's characterization of that evidence as "highly contested and tenuous at best." Even if we were to apply the "clear and convincing" standard to the testimony of the similar occurrence witnesses in this case, we would conclude that their testimony was admissible.

It is within the sound discretion of the trial judge to determine whether the evidence of other crimes is relevant to a material issue and whether the probative value of such evidence outweighs its prejudicial impact. (*People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 260, 402 N.E.2d 677.) That determination will be overturned only if there exists a clear abuse of discretion. (*People v. Funches* (1978), 59 Ill. App. 3d 71, 73, 375 N.E.2d 135.) Upon our examination of the record, we cannot conclude that the trial court abused its discretion in admitting the similar occurrence testimony offered by the State.

## VI

Defendants contend that their rights of confrontation were violated when the out-of-court declarations of co-conspirators were received into evidence prior to a *prima facie* showing that a conspiracy existed.

Prior to trial, the State made an offer of proof that the evidence would show the existence of a conspiracy independent of the state-

ments of the co-conspirators. Based on this offer, the trial court ruled that all out-of-court declarations of either defendant were admissible against both. Defendants claim that this was error and that no independent evidence of conspiracy was presented.

Declarations of one conspirator may be used against another conspirator who is not present when the declarations are made, on the theory that the declarant is the agent of the other, and the admissions of one are admissible against both under a standard exception to the hearsay rule. (*People v. Davis* (1970), 46 Ill. 2d 554, 557, 264 N.E.2d 140.) While it is preferable for the independent evidence of conspiracy to be introduced prior to the admission of a conspirator's declarations, there is no mandatory rule to this effect. (*People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215.) The *prima facie* case for conspiracy may be made before or after the introduction of the alleged hearsay testimony. (*People v. Gray* (1980), 85 Ill. App. 3d 726, 729, 410 N.E.2d 493.) In establishing a *prima facie* case of conspiracy, proof of the agreement, which is the essence of a conspiracy, need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused defendant. 85 Ill. App. 3d 726, 729.

In the instant case, there was sufficient independent evidence of conspiracy. (See Arguments IX and X below.) Evidence admitted under the co-conspirator exception to the hearsay rule does not violate the confrontation clause of the sixth amendment because defendants are able to confront and cross-examine the witnesses who allege that the statements at issue were made. (*People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215.) Parenthetically, we note that neither defendant has identified a single out-of-court declaration in which one defendant, directly or indirectly, implicated the other. See *People v. Columbo* (1983), 118 Ill. App. 3d 882, 949.

## VII

Defendants contend that the trial court erred in precluding a defense witness from testifying about a State witness' reputation for truth and veracity.

During the presentation of defendants' case, defense counsel attempted to lay a foundation for eliciting Melody's stepmother's opinion of Melody's reputation for truth and veracity. The State objected, arguing that a proper foundation had not been laid and that Melody's reputation for truth and veracity was not in issue. Defense counsel responded that once a person takes the witness stand, her credibility be-

comes an issue. The trial court sustained the State's objection to this testimony.

■■ ■ It has always been permissible to show that a witness has a bad reputation for truth and veracity. (*People v. Nash* (1966), 36 Ill. 2d 275, 280, 222 N.E.2d 473.) However, character witness testimony regarding a person's truth and veracity must be based not upon the personal opinion of the character witness or specific instances of the person's alleged acts, but upon his general reputation. (*People v. Montgomery* (1973), 16 Ill. App. 3d 127, 135-36, 305 N.E.2d 627.) Although a witness may be impeached by testimony showing that the witness has a poor reputation for truth and veracity, a proper foundation must be laid for such testimony and a question in proper form must be asked of the reputation witness. *People v. Dorff* (1979), 77 Ill. App. 3d 882, 888, 396 N.E.2d 827.

Our examination of the foundation questions and defense counsel's offer of proof indicates that the stepmother's testimony would have represented her personal opinion of Melody's truth and veracity. As such, it was properly excluded.

### VIII

Defendants contend that the trial court erred in applying the rape shield law (Ill. Rev. Stat. 1981, ch. 38, par. 115—7a) to a witness other than the prosecutrix.

The record discloses that the trial court barred defense counsel from cross-examining Melody G. regarding prior specific sexual acts. The court based its ruling on the Illinois rape shield law which provides: "In a prosecution for rape or deviate sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused." (Ill. Rev. Stat. 1981, ch. 38, par. 115—7a.) Defendants assert that this law applies only to the prosecutrix and not to any other witness. In our judgment, we need not reach this issue.

Defense counsel's offer of proof referred only to prior specific sexual acts of the witness. Even prior to the enactment of the rape shield law, however, "evidence of complainant's prior specific sexual acts was inadmissible and defendant was limited to proving only complainant's general reputation for immorality and unchastity." (*People v. Requena* (1982), 105 Ill. App. 3d 831, 836, 435 N.E.2d 125; *People v. Collins* (1962), 25 Ill. 2d 605, 611, 186 N.E.2d 30.) Defendants cite no authority that a similar occurrence witness in a sex offense prosecution may be impeached by evidence of prior specific sexual acts

with someone other than defendant, and we are aware of none. We find no error in the court's ruling precluding defense counsel from inquiring into the witness' prior sexual conduct.

Defendants, however, claim that they were also prevented from presenting evidence of Melody's general reputation for unchastity through the testimony of her stepmother. We have examined defense counsel's offer of proof and note that it mentioned only specific acts of unchastity which, as we have stated, were inadmissible irrespective of the applicability of the rape shield law.

## IX

Defendants contend that they were not proved guilty beyond a reasonable doubt of attempted deviate sexual assault. In support of this contention, defendants assert that the evidence was conflicting, that the prosecutrix made no effort to escape from defendants' home, that she made no outcry and delayed reporting the incident to the police. Defendants further assert that the testimony of other State witnesses was unclear. As a result, defendants submit that their convictions must be reversed. We cannot agree.

In sex offense cases, courts of review are required to examine the evidence carefully (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 323, 368 N.E.2d 608), but when the case is tried before a jury, the credibility of the witnesses and the weight to be given each witness is a responsibility reserved for the jury (*People v. Davis* (1981), 95 Ill. App. 3d 161, 166, 419 N.E.2d 682). Likewise, the effect of any inconsistencies in testimony is a question of credibility and weight to be determined by the jury. (*People v. Davis* (1981), 95 Ill. App. 3d 161, 166.) A court of review will not reverse the determination of the jury which heard the evidence presented and observed the demeanor of the witnesses unless the jury's findings are palpably contrary to the manifest weight of the evidence or so unsatisfactory as to raise a reasonable doubt of guilt. *People v. Stepney* (1977), 46 Ill. App. 3d 328, 330, 360 N.E.2d 1206.

Upon our review of the record, we are satisfied that there was sufficient evidence upon which the jury reasonably could have concluded that the defendants were guilty of attempted deviate sexual assault. While the prosecutrix did not immediately report the incident to the police or make a prompt outcry, she did escape from defendants' house at the first opportunity and told the first person she knew that she had been assaulted. There was no delay in reporting the incident which could not be attributed to the trauma of the victim's ordeal. (*People v. Slavin* (1978), 66 Ill. App. 3d 525, 529-30, 383 N.E.2d

1303; *People v. Jones* (1976), 40 Ill. App. 3d 850, 857, 353 N.E.2d 375.) We note further that the State presented substantial convincing evidence that defendants had used the same *modus operandi* with other victims of their sexual assaults.

## X

■■■ Finally, we address Rebecca's contention that the State failed to prove beyond a reasonable doubt that she was accountable for David's actions. In support of this contention, Rebecca argues that the testimony failed to show that she took part in the sexual assault of Dorothy. Rebecca states that her mere presence in the room where the attack occurred does not make her accountable.

As Rebecca points out, the State has the burden of establishing that she solicited, aided, abetted, agreed or attempted to aid in the planning or commission of the offense with the intent to promote or facilitate such commission. (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c).) Active participation, however, has not been required for the imposition of criminal guilt upon the theory of accountability. *People v. Ruiz* (1982), 94 Ill. 2d 245, 254.

In the present case, even if Rebecca did not come into physical contact with Dorothy, the evidence established significantly more involvement than her mere presence. Rebecca placed the advertisement in the newspapers and arranged to meet Dorothy. Later, Rebecca presented herself to Dorothy in the nude when David began to show a pornographic movie and remained in the family room as David assaulted Dorothy. It is apparent, particularly in light of the similar occurrence testimony, that Rebecca voluntarily attached herself to David's course of conduct and was aware of his intended criminal actions, yet did nothing to disassociate herself from the offense. In our judgment, the record amply supports the jury's conclusion that Rebecca aided and abetted David in the attempt to commit a deviate sexual assault on the prosecutrix and was therefore accountable for his conduct. *People v. Ruiz* (1982), 94 Ill. 2d 245, 255.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

DOWNING, P.J., and HARTMAN, J., concur.