THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR GEORGE SOTERAS, Defendant-Appellant.

First District (5th Division)   No. 85—2187

Opinion filed February 27, 1987.

PINCHAM, J., dissenting.

Sam Adam and Roberta L. Samotny, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Following a bench trial the defendant, Arthur George Soteras, was convicted of delivery of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)), and sentenced to a term of six years. He appeals contending that the trial court erred by admitting the adverse hearsay statements of a codefendant made outside of his pres-

ence where the evidence failed to show the existence of a conspiracy, that the proof did not conform to the indictment, and that he was not proved guilty beyond a reasonable doubt.

On June 18, 1984, the defendant, George Raess and Richard Lewis[1] were arrested in the vicinity of an Amoco gasoline station in Palatine, Illinois, and indicted for unlawfully and knowingly delivering to John McQuinn more than 30 grams of cocaine, a controlled substance. The charge against Raess was dismissed on his motion to compel the State to reveal its informant.

Pertinent to the disposition of this appeal are the following facts: At the trial of defendant and Lewis, undercover agent McQuinn testified that at 8:30 p.m. on June 18, 1984, he went to an Amoco gas station located at 410 Northwest Highway in Palatine, Illinois, to meet George Raess, whom he had known for a week. On the above date he had talked with Raess on the telephone at 1 p.m. and 7:30 p.m. about purchasing cocaine.

Over defense objections, McQuinn testified Raess told him that a friend by the name of Art had the drugs, and in the latter conversation Raess said he would have the cocaine ready whenever McQuinn wanted it. McQuinn told Raess he would pick it up at 8:30 p.m. at the gas station. There Raess got into McQuinn's car and McQuinn asked for the cocaine. Raess said his friend Art and another man would meet them there with it. After a short time, McQuinn asked Raess to call his friend to make sure he was coming. Raess went inside the station and returned to McQuinn's car saying he spoke to Art, and he would be there with the cocaine as soon as some people he was waiting for appeared. Sometime later, at McQuinn's request, Raess again went into the station, and returned saying that Art and his friend, Rick, were on the way and were in a blue Chevrolet Camaro. McQuinn said he then went to the station and called the police to advise them of Art's expected arrival.

Within 20 minutes the blue Chevrolet car slowly passed behind McQuinn's parked vehicle. It was driven by Richard Lewis. Art, whom McQuinn identified as the defendant, was in the passenger seat and nodded toward McQuinn's car. They turned off the car lights and proceeded to park on the other side of the fence, parallel to it and directly in front of McQuinn's car. Raess got out of McQuinn's car and went to the fence where the defendant and Lewis were standing. McQuinn saw the defendant hand Raess a plastic package containing a white substance. Raess then returned to McQuinn's car and gave

---

[1]George Raess and Richard Lewis are not parties to this appeal.

him the package, which he inspected. McQuinn then signaled his arrest team and told Raess he was under arrest. The car in which the defendant and Lewis were riding sped off with the car lights still off. A few seconds later, Lewis and the defendant were returned to the area in custody of the police. All three of the defendants were taken to the Des Plaines police station. There a driver's license and a firearms owner's identification card in two different names were taken from the defendant. The driver's license had the defendant's photograph on it, but was issued in the name of James D. Meehan.

McQuinn further testified that the street value of the cocaine was $25,000, and that he was supposed to have purchased it for $4,600. He admitted he did not have any conversation or agreement with the defendant and that the defendant did not deliver any drugs directly to him.

Deputy Sheriff Rizzardo testified that he was part of the arrest team and observed the actions of McQuinn and Raess through binoculars. He corroborated McQuinn's testimony as to their movements. After the blue Chevrolet pulled up to the fence, he saw the defendant hand "something" to Raess. When the arrest signal was given, he went to McQuinn's car and then saw the defendant being chased through the adjacent shopping center parking lot by other officers. He joined them and tackled the defendant. He testified that he had announced his office to the defendant at least three times, telling him to stop. He said the gas station area was "very well lit."

Deputy Sheriff Plahm testified he was part of the surveillance team. He corroborated the testimony that the defendant and Lewis pulled up in a Chevrolet and that the defendant handed something to Raess. At the arrest signal, Plahm said he stopped the Chevrolet and identified himself as a police officer. The defendant started running, but Rizzardo apprehended him.

It was then stipulated that agent Lawson arrested Lewis. It was also stipulated that a chemist for the Illinois Department of Law Enforcement analyzed a bag containing white powder which weighed 63.1 grams and tested positively to be cocaine.

On the motion for a directed finding, Lewis was found not guilty. The trial court held that the State had only proved that Lewis drove the car to the scene of delivery, was present when the substance was passed, and facilitated the defendant's departure from the gas station area. The motion was denied as to defendant because the evidence showed that he had rendered aid and assistance to Raess by giving the cocaine to Raess to facilitate the execution of the deal between Raess and McQuinn.

The defendant then testified that he had known Raess for a year and a half. The evening before the arrest, Raess brought the cocaine to the defendant's house. He knew the package contained cocaine, and said he took it because he needed money. On the day of his arrest, Raess called saying he wanted the package back and asked defendant to bring it to the gas station. Because his car was in the shop, he asked Lewis, who was his sister's boyfriend, to drive him there. He said he did not give the package to Raess in front of McQuinn because he knew it contained cocaine and did not want a witness. He denied knowing that Raess was involved in a transaction to sell the cocaine, and denied knowingly delivering drugs to agent McQuinn. He said he ran when he saw several people approach the car because he was "scared," and said he did not hear the agents announce their offices. He admitted applying for the driver's license under another name and said he did so in order to "get into bars."

The trial court found defendant guilty of the delivery of a controlled substance under the theory of accountability.

■ The defendant first contends that the trial court committed reversible error by admitting the hearsay statements of Raess to McQuinn into evidence against him because there was insufficient proof of a conspiracy between him and Raess by nonhearsay evidence and the statements were made outside of his presence.

The declarations of co-conspirators are admissible against all conspirators upon an independent, *prima facie* evidentiary showing of a conspiracy or joint venture between the declarant and one of the other defendants, insofar as such declarations are made in furtherance of and during the pendency of the conspiracy, even where there is no conspiracy indictment. (*People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) In establishing a *prima facie* case for conspiracy, proof of the agreement, which is the essence of a conspiracy, need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused defendant. (*People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1037, 454 N.E.2d 334.) The *dissent* apparently disputes this later concept and feels that a *prima facie* case of conspiracy must be proved by direct evidence.

■ Here, however, the evidence showed that the defendant had the plastic bag containing a substance, which he admitted he knew was cocaine, in his possession, that he entered the gas station premises and waved and nodded to Raess, that defendant saw Raess in McQuinn's car, that he delivered to Raess the plastic bag in which the substance was clearly visible to McQuinn, and that the defendant and

Lewis drove away with their car lights off. In addition, the defendant ran when the officers identified themselves and told him to stop. These actions of the defendant were sufficient to show that he came to the gas station with knowledge that the cocaine he possessed was to be sold by Raess and that he delivered it to Raess with the intent to promote the sale. We therefore hold that the defendant's contention is without merit and therefore the trial court properly admitted the statements made by Raess to McQuinn.

Defendant next contends that the evidence fails to prove beyond a reasonable doubt that he intentionally and knowingly delivered the cocaine to the undercover agent as charged in the indictment. We disagree.

The elements of accountability are (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) the participation must have taken place either before or during the commission of the offense; and (3) it must have been the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821.) Here, the evidence shows the defendant, Raess and McQuinn were all present for the drug transaction and that Raess conversed with the defendant immediately before the cocaine was handed to McQuinn, who was visible in the car. The defendant's actions both before and after the delivery of the drug manifest that he shared the common illegal purpose of effecting a sale to McQuinn.

For the reasons stated we affirm the judgment of the circuit court of Cook County. Pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we grant the State's request that defendant be assessed $50 as costs for defending this appeal, and incorporate it as part of our judgment.

Affirmed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. A one-count indictment alleged that the defendants, George Michael Raess, Richard Keith Lewis, and Arthur George Soteras, committed the offense of delivering a controlled substance in that they unlawfully and *knowingly delivered to John McQuinn* more than 30 grams of a substance which contained cocaine. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)). Defendant

Raess filed a motion to compel the State to produce its informant. The trial court granted the motion and ordered the State to produce the informant. The State refused and the court dismissed the indictment as to Raess. Defendants Lewis and Soteras waived trial by jury, were jointly tried, and at the close of the State's case, on motion for a directed finding, Lewis was found not guilty. Defendant Soteras presented evidence in his defense. He was found guilty and sentenced to six years' imprisonment.

On this appeal, defendant Soteras contends for reversal that the trial court erred in admitting incriminating hearsay statements attributed to codefendant George Raess in John McQuinn's testimony and that *there was no evidence that he knowingly delivered a controlled substance to John McQuinn.* Hence, he contends the evidence did not establish his guilt beyond a reasonable doubt.

At trial, undercover agent John McQuinn testified that at 8:30 p.m. on June 18, 1984, he went to an Amoco gasoline station located at 410 Northwest Highway in Palatine, Illinois, to meet George Raess, whom he had known for a week. He had talked with Raess on the telephone that day at 1 p.m. and 7:30 p.m. about purchasing cocaine.

Over defendant Soteras' objections, McQuinn testified that Raess told him that a friend by the name of Art had the drugs and that in a later conversation Raess said he would have the cocaine ready whenever McQuinn wanted it. McQuinn told Raess he would pick up the drugs at 8:30 p.m. at the gas station. Raess got into McQuinn's car, and McQuinn asked for the cocaine. Raess said his friend Art and another man would meet them there with it. After a short time McQuinn asked Raess to call his friend to make sure he was coming. Raess went inside the station and returned to McQuinn's car and said he spoke to Art and that Art said he would be there with the cocaine as soon as some people he was waiting for appeared. Sometime later, at McQuinn's request, Raess again went into the station, and returned saying that Art and his friend, Rick, were on the way and were in a blue Chevrolet Camaro. McQuinn said he then went to the station and called the police to advise them of Art's expected arrival.

Within 20 minutes a blue Chevrolet car slowly passed behind McQuinn's parked vehicle. It was driven by Richard Lewis. Art, whom McQuinn identified as the defendant, was in the passenger seat and nodded toward McQuinn's car. The car lights were turned off, and the car proceeded to park on the other side of the fence, parallel to and directly in front of McQuinn's car. Raess got out of McQuinn's car and went to the fence where Soteras and Lewis were standing.

McQuinn saw Soteras hand Raess a plastic package containing a white substance. Raess then returned to McQuinn's car and gave him the package, which he inspected. McQuinn then signaled his arrest team and told Raess he was under arrest. The car in which Soteras and Lewis were riding sped off with the car lights still off. A few seconds later, Lewis and Soteras were returned to the area in custody of the police. Raess, Lewis, and Soteras were taken to the Des Plaines police station.

McQuinn admitted on cross-examination that George Raess was the only person with whom he had any conversation about the purchase of the drugs. McQuinn further testified on cross-examination that he never spoke to, that he never had any contact with, and that he had never previously seen the defendant Soteras. McQuinn additionally stated on cross-examination that he went to the Amoco gasoline station to purchase cocaine from George Raess and that his deal was with Raess. McQuinn admitted that he did not have a discussion or agreement with Soteras, that Soteras never gave him anything, that he did not hear any conversation that Raess had with Soteras, and that he had no idea of what Raess said to the person to whom Raess said he talked on the telephone.

Deputy Sheriff Rizzardo testified that he was part of the arrest team and observed the actions of McQuinn and Raess through binoculars. He corroborated McQuinn's testimony as to their movements. After the blue Chevrolet pulled up to the fence, he saw Soteras hand "something" to Raess. When the arrest signal was given, he went to McQuinn's car and then saw Soteras being chased through the adjacent shopping center parking lot by other officers. He joined them and tackled Soteras. He testified that he announced his office to Soteras at least three times, telling him to stop.

Deputy Sheriff Plahm testified he was part of the surveillance team. He corroborated the testimony that Lewis and Soteras pulled up in a Chevrolet and that Soteras handed something to Raess. At the arrest signal, Plahm said he stopped the Chevrolet and identified himself as a police officer. Soteras started running, but Rizzardo apprehended him.

It was then stipulated that Agent Lawson arrested Lewis. It was also stipulated that a chemist for the Illinois Department of Law Enforcement analyzed a bag containing white power which weighed 63.1 grams and tested positively to be cocaine. The State rested.

Both defendants Lewis and Soteras moved to strike Officer McQuinn's testimony of his hearsay conversations with Raess on the ground that these conversations were inadmissible hearsay as to each

of them. The trial court granted defendant Lewis' motion to strike but denied defendant Soteras' motion to strike. In so doing, the trial court stated:

"Now, you have heard, taking aside the statements attributed to Mr. Reyes [*sic*], which involve or name Mr. Soteras or the name Art who was supposed to be the source, you have a waiting period. You have a transaction that is going to apparently be going down between McQuinn and Mr. Reyes [*sic*] and you have certain conversations between them where Reyes [*sic*] indicates he is waiting for somebody to come to make the delivery. So let's assume that your man was not named as that person at all. Thereafter you do have two individuals arriving at the scene and you have the uncontradicted testimony of the agent corroborated in some degree by other witnesses \*\*\*. *I think that circumstantially that one could believe from the evidence that the person who delivered the powder would have some knowledge as to the contents of that package* \*\*\* *[which] is an independent act which would establish that he was part of a preconceived plan to make a delivery to Mr. Reyes [sic] at that time.*" (Emphasis added.)

Defendant Lewis' motion for a directed finding of not guilty was granted. The trial court held that the State proved only that Lewis drove the car to the scene of the delivery of the cocaine, that Lewis was present when the substance was passed, and that Lewis facilitated Soteras' departure from the gas-station area. Soteras' motion for a directed finding of not guilty was denied on the ground that the evidence showed that Soteras delivered the cocaine to defendant Raess, who in turn delivered the cocaine to McQuinn.

Soteras then testified as follows. He had known Raess for a year and a half. The evening before his arrest, Raess brought the cocaine to the Soteras' house. Soteras knew the package contained cocaine, and he took it because he needed money. On the day of his arrest, Raess called and said he wanted the package back and asked defendant Soteras to bring it to the gas station. Because his car was in the shop, he asked Lewis, who was his sister's boyfriend, to drive him there. Soteras said he did not give the package to Raess in front of McQuinn because he knew it contained cocaine and did not want a witness. He did not know that Raess was involved in a transaction to sell the cocaine to McQuinn, and he did not knowingly deliver drugs to agent McQuinn. He said he ran when he saw several people approach the car because he was scared and said he did not hear the agents announce their offices.

The trial court found Soteras guilty, under the theory of accountability, of having unlawfully and knowingly delivered a controlled substance to John McQuinn.

Soteras urges that he was not charged with or found guilty of the unlawful possession of a controlled substance; that he was not charged with or found guilty of unlawfully and knowingly delivering a controlled substance to Raess; that he was charged with and, via the principle of accountability, was found guilty of unlawfully and knowingly delivering a controlled substance to John McQuinn. Soteras further urges that the trial court's conclusion that "[o]ne could believe from the evidence that the person who delivered the powder would have some knowledge as to the contents of the package *** an independent act which would establish that he was part of a *** preconceived plan to make a *delivery to Mr. Reyes* [*sic*]," was insufficient and an improper basis to find that he was guilty of unlawfully and knowingly delivering a controlled substance to McQuinn, even under accountability principles. (Emphasis added.) Soteras also contends that the trial court erred in admitting into evidence and relying on McQuinn's inadmissible, incriminating, hearsay conversations with Raess.

A codefendant's hearsay declarations made in furtherance of or pursuant to and during the pendency of a conspiracy or joint venture are admissible against a defendant whose membership in the conspiracy has been otherwise established, *i.e.*, established by evidence other than and independent of those hearsay declarations of a codefendant. (*People v. Goodman* (1980), 81 Ill. 2d 278, 283, 408 N.E.2d 215.) A codefendant's hearsay declarations are not admissible, however, to establish another defendant's membership in a conspiracy or joint venture. A defendant's membership in a conspiracy or joint venture is to be established by that defendant's words and deeds. (*People v. Deatherage* (1984), 122 Ill. App. 3d 620, 623-24, 461 N.E.2d 631.) Thus, Raess' hearsay declarations to McQuinn concerning defendant Soteras were inadmissible to establish Soteras' membership in the alleged joint venture of Raess and Soteras to deliver a controlled substance to McQuinn.

In *Deatherage*, Gary Deatherage and Danny Cabage were charged in an indictment with unlawfully and knowingly delivering cocaine to Francis Simmons, who was an undercover agent. Deatherage was tried separately before a jury and was convicted. On appeal he contended, *inter alia*, that the trial judge improperly admitted inadmissible, incriminating, hearsay declarations of codefendant Cabage as evidence against him.

In *Deatherage*, Agent Simmons testified that he and Gary DuPoy, a fellow undercover agent, entered a tavern in which Deatherage was standing near the entrance to the bar. There, DuPoy introduced Simmons to Cabage, at which time defendant Deatherage was sitting in the middle of the bar. After the three talked for awhile at the bar, Simmons, DuPoy, and Cabage went outside to a parking lot and engaged in further conversation. Agents Simmons and DuPoy left, and Cabage returned to the bar. Shortly thereafter the two agents returned to the tavern to set up a meeting for the purchase of marijuana from Cabage. Simmons and Cabage went outside, where the two arranged the sale. Simmons also requested cocaine from Cabage, and Cabage responded that he would have to contact "another guy." Instead of later calling Cabage at his home, as Cabage had instructed Simmons to do, Simmons and DuPoy went to Cabage's home at the designated hour. Deatherage was seated on the living room couch watching television. To allay Simmons' expressed concern over Deatherage's presence, Cabage told Simmons not to worry about the presence of Deatherage, whom DuPoy stated he also knew. Cabage then displayed to Simmons a sample of cocaine. At some juncture of the transaction, Simmons shook Deatherage's hand and told him he had nothing against him.

Simmons and Cabage further discussed the purchase of cocaine, and Cabage asked Deatherage what the source had said about the price. Deatherage replied that the price was $200 a gram, but that the source had purchased an "8th" for $285.

As Simmons and Cabage departed to go outside to Cabage's car for the marijuana, Simmons asked Deatherage if he could get more cocaine from the source. Deatherage started to answer, but Cabage interrupted and talked to Simmons about the quality and quantity of the cocaine. Cabage and Simmons obtained a carton from Cabage's car, reentered the house, and, in the bedroom, Cabage dumped a quantity of marijuana on the bed. Simmons paid Cabage $1,930, of which $200 was for two grams of cocaine. Simmons asked who could get his cocaine in the future, to which Cabage replied that he would have to "go through that guy plus another guy." Simmons understood "that guy" to be Deatherage. Simmons and DuPoy left the house shortly thereafter.

In reversing Deatheage's conviction for the knowing and unlawful delivery of the drugs to Simmons because of the erroneous admission of Cabage's incriminating hearsay declarations, the court stated:

> "Those statements attributable to Cabage in Agent Simmons' testimony were admitted under the co-conspirator exception to

the hearsay rule. To admit statements by a co-conspirator, which would otherwise be barred by the hearsay rule, the State must establish the existence of a conspiracy by nonhearsay evidence. Once a *prima facie* showing of a joint venture has been established by a preponderance of the evidence, statements made by a co-conspirator of a party during the course and furtherance of the conspiracy may be admitted. [Citation.] *** [P]roof of the illicit association between the declarant and the defendant *** must be sufficient, substantial and independent of the declarations. [Citations.] *** [T]he nonhearsay evidence in the case at bar does not support a finding of a conspiracy between Danny Cabage and the defendant.

*** [The] evidence is hardly sufficient to establish a conspiracy between Cabage and the defendant for the delivery of cocaine to Simmons. There is no evidence of an agreement between the two, which is the essence of a conspiracy. Mere knowledge or acquiescence of an illegal act does not constitute conspiracy. [Citation.]

Because a conspiracy between Cabage and the defendant was not proven, the trial court erred in admitting all of the statements attributable to Cabage." *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 623-24, 461 N.E.2d 631.

In the case at bar, in the absence of Raess' hearsay declarations there was no evidence that defendant Soteras was involved in, was a party to, or had knowledge of Raess' venture of the sale and delivery of drugs to McQuinn. Raess' hearsay declarations were therefore inadmissible against Soteras. The trial court erred in admitting them. *People v. Goodman* (1984), 81 Ill. 2d 278, 108 N.E.2d 215; *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 631.

With regard to the second issue raised by Soteras for reversal, *i.e.*, that there was no evidence that he was a knowing participant in Raess' delivery of drugs to McQuinn and that his conviction based on an accountability theory therefore cannot stand, the pertinent provision of the Criminal Code regarding a person's accountability for the conduct of another (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)), is as follows:

"A person is legally accountable for the conduct of another when:

* * *

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

In *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 624, 461 N.E.2d 631, the court held that to sustain defendant Deatherage's conviction of the knowing and unlawful delivery of drugs to McQuinn based on accountability, it was required that the evidence establish beyond a reasonable doubt that (1) the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the delivery; (2) the defendant's participation took place before or during the commission of the delivery; and (3) the defendant had the concurrent specific intent to promote or facilitate the commission of the offense. The court pointed out in *Deatherage* that the evidence merely established that Deatherage was present at the crime scene and had knowledge of Cabage's criminal delivery of the drugs to Simmons. In holding such evidence insufficient to convict on an accountability theory and in reversing Deatherage's conviction, the court stated:

"[W]e find the evidence insufficient to sustain the defendant's conviction of unlawful delivery on an accountability theory. This is so even with consideration of the improperly admitted hearsay declarations by Cabage. Without those statements, there clearly is no case against the defendant." 122 Ill. App. 3d 620, 624, 461 N.E.2d 631.

In the case at bar, there is no evidence that defendant Soteras (1) solicited, aided, abetted, agreed, or attempted to aid Raess in the planning of Raess' delivery or in Raess' delivery of the cocaine to McQuinn; (2) participated either before or during the offense of Raess' delivery of the cocaine to McQuinn; or (3) had a concurrent, specific intent to promote or facilitate the commission of the offense of Raess' delivery of the cocaine to McQuinn. Defendant Soteras' conviction therefore cannot stand.

In *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 750, 477 N.E.2d 821, the court affirmed the defendant's conviction for the sale of narcotics on a theory of accountability. In doing so, the court stated:

"On a theory of accountability, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of an offense; (2) this participation must have taken place either before or during commission of the offense; and (3) it must have been the concurrent, specific intent to promote or facilitate the commission of the offense."

Although Soteras concedes that the evidence may establish that he delivered the controlled substance to Raess, for which he was not

charged or found guilty, he argues, however, that the evidence does not establish that he delivered a controlled substance to John McQuinn, for which he was charged and found guilty. This issue was also raised in *People v. Davis* (1958), 13 Ill. 2d 211, 148 N.E.2d 771. In *Davis*, Louis Davis and Lavera Coleman were charged with the unlawful sale of a narcotic drug to Raymond White, a minor. Coleman testified for the State. Her testimony, with the testimony of Raymond White and the investigating and surveilling officers, established that the officers searched White and did not find any money or narcotics. The officers gave White $7, the serial numbers of which were recorded by the officers. Under the officers' surveillance, White entered a drugstore where he met Lavera Coleman, to whom White gave $6 of the $7 and asked her to purchase narcotics for him. Coleman gave the $6 to the defendant, Davis, from whom she received the drugs, which Coleman immediately gave White. White turned the drugs over to the officers, who promptly arrested Coleman and Davis. Davis had in his possession $6, the serial numbers of which had been recorded. Davis was found guilty of the unlawful sale of the drugs to Raymond White. The supreme court reversed and held:

"There is a complete absence of any evidence of a sale of narcotic drugs by the defendant to Raymond White. Nothing indicates that White and Davis ever met, or had any dealings with one another. Any sale of narcotic drugs by defendant, so far as this record indicates, was to Lavera Coleman.

\* \* \*

The crime for which defendant was indicted and convicted was that of selling narcotic drugs to a minor, Raymond White. This court cannot and does not condone the illicit trade in narcotic drugs, but the evidence in this case fails to sustain the crime charged. It may well establish a sale of narcotic drugs \*\*\*. However, we are not called upon to decide that issue, but to determine if the crime of selling narcotic drugs to a minor is proved beyond reasonable doubt. It is incumbent upon the People to prove beyond a reasonable doubt each of the elements necessary to constitute the crime charged. [Citation.] They have failed to prove a sale to the minor, Raymond White, by the defendant. Consequently, the conviction cannot stand, and the judgment must be reversed." 13 Ill. 2d 211, 213-14, 148 N.E.2d 771.

In the case at bar, the crime for which the defendant Soteras was indicted and convicted was that of knowingly and unlawfully delivering a controlled substance to McQuinn. The evidence may well estab-

lish that the defendant Soteras unlawfully and knowingly possessed and delivered a controlled substance to the codefendant Raess, but we are not called upon to decide that issue but to determine if the crime of delivery of a controlled substance by defendant Soteras to McQuinn was proved beyond a reasonable doubt. This crime was not proven.

In *People v. Sullivan* (1962), 23 Ill. 2d 582, 584, 179 N.E.2d 634, Sullivan and Latino were charged and convicted of unlawfully dispensing narcotics to Sterling Hart. At Sullivan's trial the evidence established that Sullivan sold drugs to the codefendant Latino, who in turn, outside Sullivan's presence and without Sullivan's knowledge, sold drugs to Hart. In reversing, the supreme court held:

> "We agree with defendant's contention that the evidence fails to show he sold narcotics to Hart. While the evidence shows that he may have sold heroin to Latino, it does not show that he participated in the sale to Hart. For this reason the judgment must be reversed. *People v. Davis*, 13 Ill. 2d 211." 23 Ill. 2d 582, 584, 179 N.E.2d 634.

In *People v. Bueno* (1966), 35 Ill. 2d 545, 221 N.E.2d 270, Bueno and Wright were charged and convicted for the illegal sale and dispensing of narcotics to Nicoletti, an undercover police officer. They were also charged with a conspiracy to sell and dispense narcotics. The evidence established that Nicoletti gave Wright money for the purchase of drugs. With the money, Wright, out of Nicoletti's presence, purchased the drugs from defendant Bueno. Wright delivered the drugs to Nicoletti. Wright was arrested and immediately thereafter, a short distance away, Bueno was arrested in possession of the money previously given to Wright by Nicoletti. In reversing Bueno's conviction, the supreme court held:

> "There was no evidence that the defendant had any knowledge that Nicoletti was the ultimate purchaser and at the most the evidence showed a sale by the defendant to Wright, a crime which was not charged in the indictment." 35 Ill. 2d 545, 547-48, 221 N.E.2d 270.

In the case at bar, defendant Soteras testified that he made incriminating admissions of knowingly receiving cocaine from Raess, of knowingly possessing the cocaine, and of knowingly returning the cocaine to Raess pursuant to Raess' request. Soteras denied, however, that he knew that Raess was involved in a sale of the cocaine to McQuinn, and no competent contradictory evidence was presented. Under circumstances similar to those of the case at bar, in *People v. Williams* (1968), 40 Ill. 2d 367, 369-70, 240 N.E.2d 580, the supreme court reversed the defendant's conviction for the unlawful possession

and sale of a narcotic drug to Inez Anderson and stated:

"Our review of the record in this case shows that the defendant's trial testimony, at most, incriminates him in an attempted sale of narcotics to Ruth Killingsworth. The indictment, however, charges him with a sale of narcotics to Inez Anderson, and a conviction for sale as charged in the indictment could not be predicated on the defendant's self-incriminating testimony regarding an attempted sale to Killingsworth."

Likewise, in the case at bar, Soteras' conviction for the delivery of narcotics to McQuinn cannot be predicated on his incriminating testimony that he received or that he delivered drugs to Raess.

These previously discussed authorities, *People v. Williams* (1968), 40 Ill. 2d 367, 240 N.E.2d 580, *People v. Bueno* (1966), 35 Ill. 2d 545, 221 N.E.2d 270, *People v. Sullivan* (1962), 23 Ill. 2d 582, 179 N.E.2d 634, *People v. Davis* (1958), 13 Ill. 2d 211, 148 N.E.2d 771, and *People v. Deatherage* (1984), 122 Ill. App. 3d 620, 461 N.E.2d 63, are controlling, applicable to, and undistinguishable from the case at bar.

Contrary to the majority's assertions, I do not dispute that in establishing a *prima facie* case for conspiracy, the agreement need not be proved by direct evidence. I agree that proof of the agreement may be established by admissible surrounding facts and circumstances, including the acts and declarations of the accused. I do not take the position that a *prima facie* case of conspiracy must be and can only be proved by direct evidence as the majority mistakenly asserts. It *is* my understanding of the law, however, that a defendant's membership in a conspiracy cannot be established by the words or deeds of a co-conspirator; rather, a defendant's membership in a conspiracy can be established only by the words and deeds of the defendant. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620; *People v. Miller* (1968), 40 Ill. 2d 154, 158-59, 238 N.E.2d 407.) It *is* my position that there is not one iota of admissible evidence in the case at bar, including the acts and declarations of the defendant, that he was engaged in a conspiracy with Raess to deliver a narcotic drug to John McQuinn, the offense for which the defendant was charged. The majority fails to identify such admissible evidence in the record, direct, indirect, or circumstantial.

The majority's reliance on *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334, is grossly misplaced. In *Fuller*, the defendants, husband and wife, were convicted of attempted deviate sexual assault. The victim was in the defendants' home in response to the defendants' newspaper advertisement for a live-in maid. The defendants served the victim an alcoholic drink which made her "woozy." In the

presence of the wife-defendant, the husband-defendant engaged the victim in conversations about sex and pornographic movies. The wife-defendant left the room and returned naked, at which time the husband-defendant began showing a pornographic movie. The victim told the defendants she did not want the job and attempted to leave. The husband-defendant knocked the victim down, removed her slacks, pulled her panties down, and raped her, while the wife-defendant sat naked in a chair. The victim managed to throw the husband-defendant off of her and she picked up her clothes and ran out of the house as the husband-defendant laughed at her. The facts and the charges in *Fuller* are not remotely analogous to the case at bar. It is particularly noteworthy that the following language in *Fuller* is precisely the grounds upon which the defendant's conviction in the case at bar cannot stand. The court in *Fuller* stated:

> "Parenthetically, we note that neither defendant has identified a single out-of-court declaration in which one defendant, directly or indirectly, implicated the other." 117 Ill. App. 3d 1026, 1037, 454 N.E.2d 334.

Under the aforementioned authorities, I submit that the defendant's conviction for the unlawful and knowing delivery of drugs to McQuinn should be reversed.